UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NICHOLAS M. PASQUALONE,

    Plaintiff,

v.

Case No. 2:06-cv-172
HON. ROBERT HOLMES BELL

PAUL THOMASINI, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Nicholas Mario Pasqualone, an inmate at the Ojibway Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Paul Thomansini, Phyllis Lake, and Dave Maleitzke. Plaintiff also names three unknown parties as John/Jane Does, two of whom were later determined to be Jeannie MacLeod and Shar Buck. Plaintiff states that the other mail room employee was Phyllis Lake. (Docket #19 and #20.)

In his complaint, Plaintiff alleges that he was denied access to the courts. Plaintiff alleges that he received a Magistrate Judge's report and recommendation on October 31, 2005, which ordered him to file objections within 10 days. Plaintiff hand delivered his pleadings to the RUM on November 10, 2005. On November 19, 2005, this legal mail was returned to plaintiff by Dave Maleitzke. Plaintiff complains that his mail was not processed in a timely manner. On November 21, 2005, Judge Quist dismissed plaintiff's petition based on the report and recommendation. Plaintiff claims that Defendants' actions violated his rights under the First Amendment to the United States Constitution. Plaintiff seeks compensatory and punitive damages.

On November 9, 2006, Defendants Thomasini, Lake, Macleod, Buck, and Maleitzke filed a motion to dismiss (docket #10) on the ground that Plaintiff failed to exhaust his available administrative remedies. This motion was denied on August 20, 2007, because Defendants failed to meet their burden of proof to show that Plaintiff failed to exhaust (docket #35 and #45). Defendants filed a second motion to dismiss (docket #37) on June 11, 2007, claiming that Plaintiff failed to exhaust his administrative remedies. This motion was denied on August 20, 2007 (docket #45).

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in

support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendants violated his right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d

at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

In Plaintiff's complaint, he states that he received the report and recommendation in *Pasqualone v. Jones*, 1:02-cv-840, dated October 27, 2005, on October 31, 2005. Plaintiff was required to file his objections within 10 days of his receipt of the report and recommendation. Plaintiff alleges that he submitted his objections to be mailed on November 10, 2005, ten days after he received the report and recommendation. Plaintiff requested expedited handling of his mail. However, Plaintiff presented the mail already sealed, so that it did not qualify as "Expedited Legal Mail." Defendant Thomasini attests that he reviewed the disbursement form, completed the date and time submitted section, checked the box "other" and wrote "Mail sealed upon presentation" on the line provided. Plaintiff then signed the form and returned it to Defendant Thomasini. Later that day, Defendant Thomasini began processing Plaintiff's mail as expedited legal mail, but remembered that the mail did not qualify as such pursuant to MDOC Policy Directive 05.03.118I have, ¶ E, because it was sealed. Defendant Thomasini then sent the mail to be processed by the Business Office. (Thomasini affidavit, Defendants' Exhibit A, ¶5 - ¶7.)

In her affidavit, Defendant MacLeod attests that she is a clerk in the mail room Plaintiff's mail did not qualify for Expedited Mail handling, so she processed and returned the mail according to MDOC operating procedures on November 10, 2005. (MacLeod affidavit, Defendants' Exhibit B, docket #71.) Defendant Lake attests in her affidavit, which is attached to the brief in

support of summary judgment, that she was employed in the mail room but was not working on November 10, 2005. (Lake affidavit, Defendants' Exhibit C.)

In her affidavit, Defendant Buck attests that on November 10, 2005, the Business Office determined that Plaintiff only had $0.01 available in his account and that Plaintiff had purchased five items from the prisoner store on November 9, 2005, so he did not have enough money to pay for postage. Because Plaintiff's mail did not qualify for special handling, he was not entitled to a postage loan and his mail was returned to him for insufficient funds. (Buck affidavit, Defendants' Exhibit D.)

Defendant Maleitzke attests that on November 19, 2005, which was a Saturday, he noticed that the mailbox for Fox and Gulf Units was overflowing, so he sorted through the paperwork and handed the returned mail out to the appropriate prisoners, which included Plaintiff. Plaintiff asked why his legal had not been sent out and Defendant Maleitzke explained that legal mail authorization had been denied because Plaintiff had sealed the envelope. Defendant Maleitzke advised Plaintiff to resubmit the mail, and that Defendant Maleitzke would process it on Monday, November 21, 2005. (Maleitzke affidavit, Defendants' Exhibit E.)

Defendants state that they are entitled to summary judgment on Plaintiff's access to courts claims because Plaintiff's mail was delayed due to his own conduct. Defendants state that there was no attempt to interfere with Plaintiff's ability to submit his objections to the report and recommendation in a timely manner. As noted by Defendants, *Lewis v. Casey* states that so long as delays in mailing out legal documents are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury. *Lewis*, 518 U.S. 343, 361-362. In this case, Plaintiff failed to follow MDOC

procedure, which resulted in a delay in his legal mail being sent out of the prison. Consequently, Defendants were not responsible for any injury to Plaintiff's underlying legal action.

In addition, the undersigned notes that the failure to promptly submit his objections does not appear to have caused Plaintiff to suffer any actual injury. Plaintiff claims that his habeas corpus action challenging the 2000 revocation of his parole for possession of heroin, *Pasqualone v. Jones*, 1:02-cv-840 (W.D. Mich. 2005), was dismissed as a result of his failure to file timely objections. In that case, a report and recommendation was issued on October 27, 2005, which found that Petitioner was not prejudiced by the change of witness for his revocation hearing. In the report and recommendation, the Magistrate Judge also found that a claim of false testimony is not grounds for federal habeas corpus relief absent a showing that the prosecutor was aware of the false testimony. Moreover, the Magistrate Judge noted that the alleged false testimony that the witness performed the field test on the heroin was not material because the identification of the heroin was established by the State Police laboratory report. Finally, with regard to the remainder of the claims regarding the falsity of the witness testimony, the Magistrate Judge found that the alleged mis-statements were not material to the finding that Plaintiff possessed heroin. *See Pasqualone v. Jones*, 1:02-cv-840 (W.D. Mich. 2005), October 27, 2005, report and recommendation, docket #23.

On November 21, 2005, the court issued an order adopting the report and recommendation to dismiss the action, which stated that no objections had been filed. *See Pasqualone v. Jones*, 1:02-cv-840 (W.D. Mich. 2005), docket #24. Plaintiff's objections were filed with the court on November 28, 2005, but were not considered because they were untimely. The court has now reviewed the objections, which merely reassert the facts and analysis set forth by Plaintiff in his original petition for habeas corpus relief, as well as in his response to the brief in opposition to habeas corpus. *See Pasqualone v. Jones*, 1:02-cv-840 (W.D. Mich. 2005), docket #1

and #18. Therefore, the court already had notice of the substance of Plaintiff's objections prior to it's adoption of the Magistrate Judge's report and recommendation. Therefore, Plaintiff was not injured by the failure to file his objections in a timely manner.

Finally, Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

- 8 -

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Therefore, because Defendants' conduct did not violate Plaintiff's constitutional rights, they are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is

recommended that Defendants' Motion for Summary Judgment (docket #68) be granted and that this case be dismissed in its entirety. In addition, should the court adopt the report and recommendation in this case, Plaintiff's motion for appointment of counsel (docket #75) is properly denied as moot.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

          /s/ Timothy P. Greeley
          TIMOTHY P. GREELEY
          UNITED STATES MAGISTRATE JUDGE

Dated:   January 22, 2009